Okay, counsel, I think we're ready for the next case on the docket, Kell v. Benzon, 17-4191, and we'll hear from Mr. Peterson. May it please the court, Andrew Peterson for Appellant Warden. The structure of the federal constitution gives to the states certain core sovereign functions in executing the will of the people, including the just administration of a criminal justice system. The Supreme Court in Rines v. Weber cautioned the lower courts about intruding on those sovereign interests, except in the rarest cases of palpable injustice. The court intended its test that it announced in Rines to genuinely limit stays of federal litigation, and given that the Supreme Court's own jurisdiction in that case depended on the collateral order doctrine, this court can also have confidence that it has jurisdiction to hear the state's claim of an improper stay. The district court's stay order in this case violated all three elements of Rines, and it did so in a way that irrevocably and unreviewably deprives the people of Utah of their constitutional right to timely carry out their presumptively valid sentence against Mr. Kell. Utah's sovereign dignitary interests mandate exercise of the collateral order doctrine to reach jurisdiction in order to review and reverse the stay order. I would like to address first jurisdiction and then the Rines elements, unless the court has questions in a different order. First, under the collateral order doctrine, the first element of that jurisdictional test is that the decision of the lower court must have been conclusive as to an important interest separate from the merits. I know that sort of bleeds into the second element there, but there was nothing tentative about the district court's stay order here. It conclusively decided that the petitioner's interests in going back to state court to exhaust the supplemental instruction claim outweighed the state's sovereign interests in timely executing its sentence against Mr. Kell. There was nothing tentative about this. Appley has cited the Moses H. Cone case to suggest that stays generally are inherently tentative and therefore not amenable to collateral order jurisdiction, but this is wrong. First of all, Moses H. Cone said that in ordinary circumstances, stays are not conclusive for collateral order purposes. But this is not ordinary. This is not simply a matter of the federal district court putting the federal case on hold for no other reason than to delay the litigation. The state is not asserting litigation delay as the important interest that's being conclusively decided against it. This is a matter of the state's sovereign right to carry out its sentences, and every day that passes is a day that concludes without the sentence having been carried out. So are you saying that the district court was somehow required to have an anticipatory procedural default? Isn't that within the district court's discretion? I think that probably goes to a different element than the conclusive decision, but yes, I do think that anticipatory default is a necessary consideration in deciding whether there is potential merit to the claim. And again, we're sort of jumping ahead to Ryan's itself, but anticipatory default is a way of respecting the state's sovereign interests and a way of ensuring that we're not sending cases back, halting execution of presumptively good reason. I mean, in this case, for example, the state defaults were obvious and inevitable and that has since been proven out in the state litigation where the state court denied the petition on purely procedural grounds for exactly the same reasons that the state alerted the federal district court to in its opposition to the Ryan's motion. The time and procedural bars were obvious and inevitable. The application of default in federal court should have been a matter of federal law for the district court to apply. Instead, the district court here said, well, I think default is a question for the state court to address. But again, default is a federal question. So what's the answer? That the district court erred by, that the district court was required to find an anticipatory default? Or could the district court simply defer to the state court on that question? Deferring to the state court on that question would essentially flout Ryan's admonition against making these stays rare. If the district courts are going to say, we're not going to do that, a petitioner can raise any time barred or procedurally barred claim at any point in the federal litigation, as Mr. Kell did here many years into the federal litigation and say, but, you know, don't bother looking at the state bars. It's not your problem. We'll just dump that on the state court. All right. I don't want to use up all your time on this, but I do want an answer. And if you can't answer, that's all right, too. But are you saying that the district court was required to anticipatorily procedural default? That there's some rule of law that requires that? Isn't that up to the district court? There isn't a direct holding that requires it. My proposition is that it is consistent with the purposes of the AEDPA and the spirit of Ryan's to at least consider the question and where the state bars are obvious and inevitable. They should be applied in federal court. I certainly concede that there are circumstances where it might not be so clear. And in that case, the federal court might be well advised to defer to state action first. So I do want to follow up a little bit on your exchange with Judge Phillips. So if I can ask you a couple of factors in regard to Ryan's admonition that one of the factors is whether the claim is potentially meritorious, we should in that context consider procedural default, right? Yes. Both state defaults and federal defaults. And so then when we consider the collateral order doctrine, when the Supreme Court has directed the courts to consider whether or not the question raised is separate from the merits, you're saying now the same word merit doesn't mean procedural default, right? Or let me put it that way. Put it this way. When we consider the collateral order doctrine on the element, the second element, whether or not the question is separate from the merits, do we consider the potential for procedural default? The question of the scope of the important separate issue is a fluid one. How broad a level of generality do we look at what issue has to be separate from the merits? So certainly you could say, well, each of the three Ryan's elements has to be separate from the underlying merits of the litigation for us to reach, to have collateral order jurisdiction. I'm unaware of any case that says that you have to look to all of the elements of the test. Well, you may have answered my question, but if you did, I'm not sure. I don't think I'm there yet. So okay. My point is that I didn't mean to interrupt you. Well, if you have further questions. Well, I just wanted to ask you, on the separate from the merits part, do you consider the word merits in the phrase separate from the merits, does that encompass procedural default? I can't see how it would. Well, so, but a minute ago, the same word, when we're talking about the Ryan's versus Weber factors, whether or not something is potentially meritorious, there we do consider procedural default, but now when we're considering the collateral order doctrine, merits does not encompass procedural default. How do you reconcile those answers? What Ryan's was considering when it says potential merits is whether there is a constitutional claim that the petitioner, in fairness, ought to be able to exhaust and potentially get relief on. The question of default doesn't look to the substance of the constitutional claim, and in many instances, including those here, we're also suggesting that the defaults don't preclude considering the merits of the constitutional claim in determining whether there's jurisdiction as well. I think this is probably a linguistic anomaly here, that we use the same word merits, but I think you have to look at the spirit of what the collateral order doctrine is reaching at and what Ryan's test is reaching at. I don't want to monopolize your time either, but if you're talking about the spirit of the collateral order doctrine, and particularly the second element, I think it's fairly evident that the spirit or the purpose is not to require piecemeal litigation for the district court. That's right. And so if the court then says, okay, well, we're going to entertain it now and let the district court decide, then later we're going to consider exactly the same issue, procedural default, I don't understand how your argument about this seems to be that the spirit of the collateral order doctrine weighs heavily against you, because it's exactly the same issue, procedural default. I'm sorry. The collateral order cases, you're right, are precisely to avoid piecemeal litigation. If the district court were to at once decide that there was neither good cause under Ryan's nor cause to excuse a procedural default, then there's no need for repetitive litigation over that. The same is true if this court were to hold good cause means Coleman and there was no good cause here. That settles the question. There's nothing to merge into later litigation. And in no event would the court be required to consider the merits of the supplemental instruction claim. Well, that's all well and good, but when you go back to the Ryan's case, the Supreme Court, the Eighth Circuit, they said we've got jurisdiction. They held the collateral rule applied in that substantively. They make no mention of the necessity for looking at the jurisdictional basis on the collateral doctrine. Now you'd think that as much as the Supreme Court preaches to us that the first thing we have to decide is our jurisdiction, and they take a case, they substantively reverse it, and don't even mention the fact that the Eighth Circuit took this on the basis of the collateral doctrine. I think it would be... So I have a problem. I mean, it's a great discussion, but you'd think that if we didn't have jurisdiction, you'd think that the Supreme Court would have resolved that case immediately by saying the collateral rule doctrine doesn't apply, period. I agree with that. I think it would be a remarkable proposition to suggest that the Supreme Court took a case from the Eighth Circuit where the Eighth Circuit never had jurisdiction to begin with. It would be even more remarkable to do what the Supreme Court did in its mandate, which was to return the case to the Eighth Circuit to rule substantively on the elements of the Ryan's test. Don't get too excited because I'm seeing it that way, because I come back then where Judge Phillips questioned... I mean, you may or you may not win the question about whether there's jurisdiction up here, but you've got other issues in regards to ADIPA and whether or not we still look at it, or did the trial court in this instance do something wrong by sending it back by granting that stay? So I don't want you to get too excited about my comment. I'll try, Judge Phillips. I see that I only have about a minute left. I think I would like to reserve the remainder of that time for rebuttal. I'm going to give you a minute, but if you want to... Did you want him to answer your... Do you have a question? No, I don't have... Okay. Thank you very much.  Good morning. May it please the court. My name is Lindsay Layer, and I'm here with my colleague, Therese Day, on behalf of Troy Kell. I'd like to start today by discussing the jurisdiction issue. Four other circuit courts, the Fifth, Sixth, Eighth, and Ninth, have considered whether there is jurisdiction under the collateral order doctrine to appeal a district court's order granting a Ryan stay, and all four courts have held that there is not. In particular, all four courts agreed that a district court's order granting a Ryan stay fails to satisfy the third requirement of the collateral order doctrine, which is that the decision be effectively unreviewable by other means. Those courts all found that under the Supreme Court's decision in Mohawk, there were other avenues of review available, including certification under 1292B and petition for writ of mandamus. The Fifth and Ninth circuits also noted that review is available on appeal from final judgment. Does not the fact that they sought certification in this case, doesn't that take away two of those circuits? It doesn't. The court touched on this in Mohawk, and what they said is that review doesn't have to be had in every case, as long as it's available. So the question that this court is considering is whether review is available on the class of orders, not necessarily on this order in particular. And certification under 1292B was available to the state, it's just that the district court denied that certification. Well, that's pretty final, isn't it? That tells you as a lawyer, don't come back with that argument again. Yes, it does. But again, it still was an avenue that the state had available to it to seek review, and that's the question that this court has to consider under the collateral order doctrine, is what avenues are available. Okay. So I consider it as the trial court did here, and I said I'm not going to certify the question. That's final. So, isn't it? Sure. And you can't say, well, tell me what the other available remedies were in this case. So there's a petition for a writ of mandamus was available, and again, appeal on following final judgment were all available avenues of review. But this is a stay. This was the grant of a stay, wasn't it? That's why they appealed. It's not a final judgment in the sense that you've got a directive. What you have here is a trial court saying I'm staying this procedure because it's a mixed question. I'm sending it back to the state. Correct. Now, what other appeal is available other than what they chose? Well, like I said, a petition for a writ of mandamus is available. And then the other circuit courts that have considered it, two of them said that appeal following final judgment, that this issue could be appealed following final judgment. The other two didn't say anything about that. Okay. But again, if you look to the Supreme Court's decision in Mohawk, the Supreme Court there really says that as long as there is some other avenue of review, that that is enough and that the that jurisdiction under 1291 shouldn't be exercised. Let me explore that with you a little bit. And back to Rines. Rines contemplates review because it speaks about abuse of discretion. And if if there's going to be an abuse of discretion standard, then that presumably means that there's a reviewing court determining whether there was an abuse of discretion. And if they're 1292, as Judge Baldock says, if the district court says no, goodbye on that. The appeal is largely mooted, at least on the stay issue, if you wait for it to come back to the district court and so forth. So I don't see much review there. That leaves you with mandamus. How does mandamus work with abuse of discretion? If the and choose any of the Rines factors and then say the government challenges the district court on the use of its discretion there, how is that mandamus? They file a mandamus with us and say, order the district court to rule in our favor on this matter of discretion. Well, part of the mandamus standard is a clear abuse of discretion. So that that that would provide an avenue of review for instances where there are serious error. And that's exactly the language that the Supreme Court used in Mohawk. They talked about 1292B and mandamus being available, they refer to them as safety valves, for when there are clear instances of error. So is a clear abuse of discretion, for example, on intentional delay? You can argue intentional delay in this case. How would you ever show a, quote, clear abuse of discretion as opposed to a regular abuse of discretion? I mean, I suppose if there was something in the record that indicated that that the petitioner had intentionally delayed or was somehow engaging in abusive litigation tactics, whether that was something in the record from state post-conviction proceedings or from the federal habeas proceedings that, you know, just clearly indicated that in some way. I think, I mean, that that's what the court looks to. The court, for example, in this case, looked to the circumstances, looked to the existence of a case management schedule, considered the arguments on both sides and found that there was not intentional delay. Well, let me, we either do have jurisdiction or we don't have jurisdiction. And the ground work's been laid. If there's four circuits going one way and we go another, perfect vehicle for an appeal to the Supreme Court to straighten it out. You heard my concerns when the court didn't even address it in rhymes. So let's go, assuming that we're here, what other arguments do you have as to why the, let's say that, okay, we have jurisdiction. That doesn't automatically mean you're going to necessarily lose. What other basis, if we get past the jurisdiction, are you arguing that the trial court did not commit a reversible error where we should send it back, say, undo the writ or undo the state? Sure. So the district court was well within its discretion in defining good cause the way that it did here. In pace, the Supreme Court indicated in dicta that a petitioner's reasonable confusion about a filing deadline would ordinarily constitute good cause under rhymes. But the Supreme Court held in Coleman itself that confusion about a filing deadline was not sufficient to meet the cause and prejudice standard. So the language in pace indicates that the Supreme Court intended those two standards to be different. And the Ninth Circuit explains this further in Blake. And what the Ninth Circuit explains is that good cause under rhymes is distinct because it only stays the federal case to allow the petitioner to present his claims to the state court first, as opposed to under Coleman where... in regards to this. And that's what bothers me about the Ninth Circuit case. To show good cause, there has to be diligence, actually, on your part. And my question is to you, at what point in time did the petitioner here become available or become aware of his claims of ineffectiveness now? Wasn't it like five years or something like that? Wasn't it quite a period of time before they even bring this? So the claims were uncovered in mid-2012. They were raised for the first time in Mr. Kell's amended habeas petition, which was filed in January of 2013. At the time that the affidavits from the jurors were signed, there were still state court proceedings going on on Mr. Kell's initial postconviction proceedings. The amended petition was filed in 2013. Fairly shortly after that, the parties stipulated to a case management schedule, which contemplated that discovery and an evidentiary hearing would happen before other briefing. And that once those things had been completed, the parties would come up with a schedule for that other briefing. Mr. Kell adhered to that case management schedule. Discovery was ongoing for three years, at which point, once discovery concluded, a motion for an evidentiary hearing was promptly filed. Once that was denied, that's when there was other argument and the Rhines motion was filed as the case management schedule contemplated. At the time the case management schedule was entered, the state was on notice that these claims remained to be exhausted and that Mr. Kell would be filing a Rhines motion. That is something that Mr. Kell raised in his amended petition when he filed it. The state could have chosen not to agree to that case management schedule at the time. They did not, and discovery ultimately took, I think, longer than probably anybody anticipated. But it would not have been practical or efficient to file that Rhines motion in the middle of discovery proceedings while the parties are going back and forth on releasing documents and essentially just halt those discovery proceedings in the middle to put the case on hold to return to state court. Well, my problem, so that you'll see, is that I take the Supreme Court is exactly what it's saying, that to grant a stay, if we do that very often in the federal realm, whether it's a state matter, of course, like a death penalty case here, we're clouding or muddying the concept of what a DEPA or EDPA, however you want to pronounce it, does as to what the state, there's an encroachment. And to me, this case almost smacks of the exact picture of what the Supreme Court was drawing for the federal courts when we don't hold the district courts to applying the proper rules in regards to these kind of stays. That's what's bothering me. And I may get over that. I don't know yet. But I just wonder, and I don't speak for my colleagues, I just want you to understand that this almost seems like that classic case that the court was saying, feds don't do that. Because we have a set and you should also in this case decided cause or prejudice or good cause and things ourselves and then told the district court, yeah, you should, you were okay, or no, you shouldn't have done that. Now, because actually what's happened, I think someone filed a 28J, the state district court has already entered an order in this matter denying the petitioner's claim, right? That's true. And that's on appeal now to the Utah Supreme Court. It is. That's true. But the question still remains an open question. There are three cases from the Utah Supreme Court, Wynward, Gardner, and Hurst, which leave open the question of whether there could be exceptions to the PCRA in Utah. And then there's a case currently pending that also deals with that issue. It's a case called Archuleta, which is another one of the capital cases in Utah. To get to your point about multiple stays in this case, it's true that there have been multiple stays, but they are justified by the facts in this case. So the initial stay, the initial petition in this case was filed in order to ensure that Mr. Kell complied with the EdPUS statute of limitations. He had ongoing state court proceedings that were a part of his initial post-conviction at that point. So he filed a protective habeas petition and the district court judge at that time found that that's what he had done and that it was justified to allow him to finish his state court proceedings before proceeding in federal court. In this instance, with the good cause standard, what the district court found here is that the post-conviction petition that was filed in Mr. Kell's case was a perfunctory petition that counsel had done no investigation, had not interviewed any jurors, and three jurors ultimately said, while we were deliberating in the penalty phase, we sent out a question, the judge came in and gave us an answer. It was not on the record and it was not in the presence of Mr. Kell or his counsel. And part of the context of that that doesn't appear in our briefs is that Mr. Kell's trial was held inside the prison. So that's the circumstance of the seriousness of the claim and of counsel's failure to, post-conviction counsel's failure to investigate that. The district court cited to several affidavits in the record, including an affidavit from post-conviction counsel himself saying, I didn't conduct any investigation. So I agree that there have been multiple stays in this case and that that might be unusual, but it's warranted by the circumstances. I wanted to touch briefly on... I was about to tell you, you're out of time, but I was going to ask you, in any event, to respond to Judge Baldock's question to your adversary about the fact, with regard to a potential concern, that in Rines v. Weber, the Supreme Court did entertain appellate jurisdiction and you remember the question that was posed by Judge Baldock to your adversary, so I do want to give you an opportunity to answer that. Sure. So Rines itself was an Eighth Circuit case, and the Eighth Circuit considered this issue, again, more recently in Howard, which is a 2010 case, and what the Eighth Circuit found there is that the reason that they had jurisdiction in Rines itself was because it was not clear that the district court was even permitted to grant a stay, and that the Supreme Court answered that question in Rines. In Rines, the Supreme Court said, yes, a limited delay is justified if the petitioner meets these three requirements. And so that once the Supreme Court had answered that question, the state could no longer satisfy the collateral order doctrine. So that's how the Eighth Circuit itself, which had granted jurisdiction in Rines, answered that question. Did you have any follow-up? Thank you very much, Counsel. Thank you. On that very last question, if it were true that Rines conclusively and finally settled the question of whether there is jurisdiction to decide whether stays can be implemented, then it couldn't have remanded the case to the Eighth Circuit to then go ahead and implement the elements of Rines. Well, except for the fact that the Eighth Circuit was, in an entertaining appellate jurisdiction, was applying a standard that was later vitiated by the Supreme Court ruling. And so the question was not whether or not the Supreme Court had jurisdiction. Of course, the Supreme Court jurisdiction, the Eighth Circuit had predicated its appellate jurisdiction on a standard that had been vitiated, and presumably that's why the Eighth and Ninth Circuits have rejected the very argument that you're making. But it's simply not true that the Eighth Circuit did not have continuing jurisdiction to review whether a Rines stay would be appropriate after remand from the Supreme Court. It's not true that collateral order jurisdiction depended entirely on the question whether stays are appropriate at all. It had continuing jurisdiction to decide whether a stay was appropriate under Rines in that case, and the Supreme Court remanded the case to the Eighth Circuit to decide that question. If the Eighth Circuit had jurisdiction on remand to decide that question, this Court has jurisdiction in this case to decide Rines. I see that I'm now out of time. If there are no other questions, appellant asks the Court to vacate the stay order and remand with instructions to proceed. Thank you, counsel. This matter will be submitted.